UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARLA S. McGUIRE,

    Plaintiff,

v.                                                    Case No. 8:07-cv-1626-T-TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

    Defendant.
                                         /

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty years of age at the time of her first administrative hearing in August 2005. She stands 5', 6" tall and weighed 182 pounds. Plaintiff has a high school education and two years of college course work. Her past relevant work was as a trade processor, a mail-room coordinator, a real estate receptionist and salesperson, and an internal communications assistant. Plaintiff applied for disability benefits and Supplemental Security

Income payments in October 2002, alleging disability in March 2002[1] by reason of fibromyalgia, back and neck pain, and right arm and wrist pain. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ") on August 15, 2005. The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.[2] In a decision dated November 18, 2005, the ALJ found that Plaintiff was capable of performing her past relevant work as a mail-room coordinator, a real estate sales person, an operations officer, and a foreign transfer assistant. Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 49-58). On February 17, 2006, the Appeals Council granted Plaintiff's request for review, vacated the decision, and remanded the case for further consideration by the ALJ. (R. 79-81).

The administrative hearing on remand was held on July 21, 2006. The ALJ took testimony from a medical expert, a vocational expert, and the Plaintiff. At the outset of the hearing, the ALJ noted that, in the absence of a showing of medical improvement, he was bound by the residual functional capacity ("RFC") findings in the April 26, 2002, decision.

---

[1]At the first hearing, the Plaintiff said this date was an error and it was amended to March 23, 2000. At the second administrative hearing, this was changed to April 27, 2002, based on an intervening decision.

[2]Plaintiff testified she developed a nerve problem in her right arm in 1994 and was diagnosed with fibromyalgia in 1998. She also developed anxiety and depression. Plaintiff last worked in March 2000. By her testimony, she could not work after that because of pain, fatigue and weakness. Additionally, Plaintiff said that she suffered headaches every day since her March 2005 accident. On hypothetical questions propounded by the ALJ, a vocational expert testified that Plaintiff could still perform her past relevant work. (R. 474-95).

By that decision, Plaintiff was capable of lifting/carrying ten pounds occasionally and five pounds frequently; sitting for six hours and standing and walking for two hours, with the need to frequently alternate sitting and standing at will; occasional fine manipulation with her hands; and occasional climbing of stairs and ramps, balancing, and stooping, but incapable of using ladders, crouching, kneeling, or crawling, and working around concentrated dampness, humidity, heat and cold. (R. 501). Using that as a starting point, the medical expert ("ME"), Dr. Owen Linder, testified that for the period after April 27, 2002, the medical record suggested no improvement in Plaintiff's condition. In response to the question of whether or not the condition grew worse, the witness opined that Plaintiff's fibromyalgia, spinal sprain/strain and pain syndrome did not worsen in any quantifiable fashion, but there was evidence of additional TMJ dysfunction. However, the witness could not relate that to any functional handicap on the basis of the records presented. By the witness's testimony, the functional limitations imposed in the April 26, 2002, assessment were related to Plaintiff's spinal problem and wholly unrelated to any jaw pain. In conclusion, the witness opined that the RFC of April 26, 2002, continued to the current time. On questioning by the Plaintiff's counsel, the witness acknowledged that the history given by Plaintiff reflected that her headaches would at times render her unable to concentrate or focus on tasks. The witness could not identify from the record a particular organic basis likely to be the source of Plaintiff's headaches. (R. 501-512).

Plaintiff then testified regarding her headache pain. By her account, she has had headaches daily since her March 2005 accident.[3] Some days, the headaches are mild. On other days, the headaches are bad; they start in her neck and hurt all the way around. Plaintiff described it as a jaw pain that goes up into her ears and around the side of her head, and sometimes it makes it painful for her to open her eyes. The pain is constant, she always has a "dull" headache, and at times, she gets very sharp pains that last "real quick." The headaches can intensify to the point where she is no longer able to do things such as read a book, watch television, or do household chores. The headaches occasionally keep her from sleeping at night. The headaches also interfere with her driving. Plaintiff takes Baclofen (muscle relaxer and antispastic agent) and Vicodin (narcotic pain reliever) for headaches, as well as Aleve. By her estimate, she has to lie down at least three to four times a week for three to four hours due to headaches. According to Plaintiff, she felt like she was getting where she could deal with her fibromyalgia and her other conditions prior to the accident in March 2005. While her condition was painful, she was able to deal with it. After the accident, "everything went backwards." (R. 512-515).

The ALJ next called Joyce Courtright, a vocational expert ("VE"). On a hypothetical employing the RFC findings in the decision of April 26, 2002, the VE testified that Plaintiff would still be able to perform her past work as a receptionist and in

---

[3] Plaintiff testified that, prior to the March 2005 accident, her headaches were more like muscle pain or tension headaches.

4

telemarketing.[4] Additionally, she could work as a food and beverage order clerk, a reception and information clerk, and a security system monitor. On the additional assumption that Plaintiff's depression and anxiety caused mild limitations of activities of daily living and in social functioning, concentration, persistence, and pace, the VE's testimony regarding the jobs available to the Plaintiff would not be altered. On the other hand, if Plaintiff's testimony at the hearing was fully credited, there would be no work available to her in the national economy.

On questioning by Plaintiff's counsel, the VE testified that most employers would permit one day per month, or about two weeks per year, of unscheduled absences. By the witness's account, employers would not tolerate unscheduled breaks for an hour here or there, or accumulating more than eight hours a month of the same, at least over the long haul. The witness acknowledged that the jobs of telephone quotation clerk and food or beverage clerk did not require a great deal of ability to focus and concentrate, although the job of surveillance system monitor did. If someone were taking medication that caused drowsiness, the witness opined that such person should still be able to handle the job of telephone quotation clerk and food and beverage clerk, assuming that they were capable of simple repetitive work. (R. 515-521).

---

[4] This assessment assumed Plaintiff suffered from fibromyalgia, degenerative disc disease, chronic neck and low back pain, headaches, hip pain, right wrist pain, leg pain, shortness of breath and, since March 8, 2005, TMJ with headaches. (R. 516).

5

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Plaintiff's date last insured for disability benefits was September 30, 2005.

By his decision of August 18, 2006, the ALJ determined that while Plaintiff has severe impairments related to fibromyalgia, degenerative disc disease of the cervical and lumbar spine, dysthymic disorder, and since March 2005, thoracic strain/sprain and traumatic TMJ arthropathies with moderate anterior dislocation, she nonetheless had the residual functional capacity as determined in the April 26, 2002, decision, i.e., the capacity for a wide range of sedentary exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as a receptionist, as well as other work in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 18-30). The Appeals Council considered additional arguments and evidence and denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at

§ 23(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises a single broad claim –that the Commissioner erred in failing to fully and adequately consider all of her impairments, individually or in combination. More particularly, Plaintiff notes that while the medical record is replete with examples of her complaints and care for headaches, the ALJ did not mention her headache-related complaints. As such, she faults the ALJ for failing to find the condition severe at step two of the analysis, consider headaches in relation to the RFC findings, and adequately cover the condition in the hypothetical to the VE. (Doc. 22 at 10). Stated otherwise, the Plaintiff maintains the ALJ simply failed to properly evaluate this condition and a remand is necessary for a more adequate development of the record.

In response, the Commissioner maintains that the ALJ was not obliged to conclude that Plaintiff's headaches were a severe impairment because there was no medical evidence that the condition met the duration requirement and the ALJ properly discounted Plaintiff's subjective complaints of disabling headaches as unsupported by the record. The Commissioner also notes Plaintiff's history of using addictive pain medication and the evidence of illegal substance abuse and malingering. Further, he notes that on occasion, Plaintiff made no complaints to any doctor of headaches, and despite complaints that her jaw,

8

ear, and head pain were quite severe, she missed or cancelled numerous appointments in 2005 and 2006. In sum, the Commissioner maintains that the ALJ has stated good cause to discount Plaintiff's complaints regarding her headache pain. Under these circumstances, the Commissioner contends that the ALJ was not obliged to incorporate these complaints into the RFC findings. Further, given that the ALJ mentioned Plaintiff's complaint of headaches in his hypothetical to the VE, it is apparent that he considered the same as well as the effect on her RFC. Thus, the Commissioner urges that the decision should be affirmed. (Doc. 23).

Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. *Id.* at 635; *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). Here, Plaintiff claims that the ALJ failed to adequately assess or address her headaches at all appropriate stages of the evaluation process. For the reasons set forth below, I conclude that the decision and hearing transcript reflect the ALJ's due consideration of the complaints of headaches, and because the medical record does not support the disabling symptoms claimed by Plaintiff, the decision should be affirmed.

Initially, to the extent that Plaintiff claims the ALJ erred at step two of the five-step evaluation process dictated by the regulations, the claim is without merit. As set forth above,

the ALJ clearly credited Plaintiff with several severe impairments at step two. Under applicable case law, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirements at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Furthermore, the decision is fairly read to indicate that the ALJ did credit Plaintiff with a severe condition, including headaches, from her TMJ injury arising from the accident in March 2005. That the ALJ described the impairment in broad terms as "traumatic [TMJ] arthropathies," without specific mention of headaches, is of little consequence when the whole of the decision is considered. To the extent that Plaintiff asserts that the ALJ *incompletely* considered her headaches, this is simply not demonstrated.

In the end, the merits of Plaintiff's appeal hinge on whether the ALJ adequately assessed the functional limitations, if any, associated with her subjective complaints and fairly factored any such limitations into his RFC findings and the questioning of the ME and VE. Insofar as this centers on the ALJ's handling of her complaints of head pain after the March 2005 accident, I conclude that he did. In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.[5] Here, the decision reflects an

---

[5]By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies

10

adequate and fair reading of Plaintiff's claims of disabling pain. It likewise reflects the ALJ's consideration of the "pain standard" as set forth in *Landry* and the applicable regulatory provisions at 20 C.F.R. §§ 404.1529 and 416.929. In applying the standard, the ALJ credited Plaintiff with a number of severe impairments (including traumatic TMJ arthropathies) and concluded that the impairments could produce most of the symptoms and limitations alleged. Despite these findings, the ALJ concluded that Plaintiff's testimony about her symptoms was not credible to the extent that she claimed total disability. Thus, because of gaps in treatment, missed appointments, the lack of clinical support, and contrary clinical and objective findings, the ALJ concluded that Plaintiff's pain complaints were less than fully credible. (R. 24-26). Upon my consideration of the medical record, the reasons set forth by the ALJ are supported by substantial evidence. While there are complaints of headaches, particularly after the accident in March 2005, the treatment records do not support the condition or limitations now claimed by the Plaintiff.[6] In the end, the ALJ accepted the testimony by the ME that

---

the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

[6]Plaintiff saw several doctors after her accident in March 2005. None of the doctors imposed significant functional limitations on Plaintiff based on her TMJ injury and complaints of jaw pain and headaches. In the case of Dr. Todd Green, he noted that the accident had exacerbated preexisting, intermittent and chronic headaches, but the condition was stable. Furthermore, in one treatment note, he concluded that Plaintiff's headaches were improving with care. (R. 313).

Plaintiff's RFC had not changed significantly since the April 2002 decision. While Plaintiff suffered a TMJ injury in the March 2005 accident and complained of jaw, ear and head pain, the ME found no medical support for finding greater functional limitations after the accident. Significantly, apart from demonstrating that she complained of headaches, Plaintiff wholly fails to demonstrate the error in the ALJ's conclusion that her condition was not as severe as claimed or that the headaches did not alter the RFC conclusion.

Finally, insofar as Plaintiff complains that the ALJ's failure to properly address her headaches resulted in inadequate hypothetical questions to the VE, the claim fails in the absence of Plaintiff demonstrating the failure of the ALJ to include a pertinent limitation. It is correct that the ALJ must employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Further, where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that he has properly rejected as unsupported. *Crawford v. Comm'r. of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004). While Plaintiff urges unspecified but additional limitations related to her headaches that were not referenced by the ALJ, I find no error in this given the ALJ's conclusion that the medical

record and testimony did not support addition limitations related to her TMJ injury and complaints of pain.[7]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 13th day of January 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[7] It is again worth noting that Plaintiff was represented at the administrative hearings and her counsel had a full opportunity to question the VE at each hearing.